UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80581-CIV-MARRA

MERRILL REUTER, M.D.

Plaintiff,

v.

LANCET INDEMNITY RISK RETENTION GROUP, INC., a foreign profit corporation; and PHYSICIANS CASUALTY RISK RETENTION GROUP, a foreign profit corporation,

Defendants.
_______________________________________/

**FINAL JUDGMENT GRANTING DEFENDANT'S MOTION TO DISMISS**

This Cause is before the Court upon Defendant Lancet Indemnity Risk Retention Group, Inc.'s ("Lancet") Motion to Dismiss ("Motion to Dismiss" and "Motion") (DE 1-3 at 33). Plaintiff Merrill Reuter, M.D., filed a Response (DE 10) in opposition to the Motion, and Defendant Lancet filed a Reply (DE 15). The Court has carefully considered the Motion, the Response, and the Reply, and is otherwise fully advised in the premises.

In the Complaint, Plaintiff alleges that Lancet breached its duty under the subject insurance policy to defend and indemnify Plaintiff against a claim made by a former patient. Plaintiff seeks a declaration that the former patient brought a "Claim" as defined in the subject policy during the policy period, triggering policy coverage. In the Motion to Dismiss before the Court, Lancet argues that none of the various documents identified in the Complaint as being provided to Lancet during the policy period–a letter addressed to Plaintiff from the Florida Department of Health, a report filed

by the former patient with the Florida Department of Health, and a letter from the former patient's attorney requesting disclosure of certain insurance information by statutory mandate–constitutes a "Claim" that triggered coverage.

Construing the term "Claim" in accordance with the definition set forth in the subject policy, the Court agrees with Lancet and concludes that none of the aforementioned documents falls within the definition of "Claim" so as to trigger coverage under the subject insurance policy. As a result, and as discussed more fully below, Defendant Lancet is entitled to dismissal of the claims in the Complaint, and, therefore, the Motion to Dismiss is granted.

## I. BACKGROUND

The facts relevant to the Motion to Dismiss, as alleged in the Complaint and based upon documents central to Plaintiff's claims,[1] which are taken as true for purposes of the Motion, are as follows:

### A. Lancet Issues Policy

Lancet issued a "claims made" professional liability insurance policy to Plaintiff for the policy period of May 1, 2013 to May 1, 2014, with a retroactive date of May 1, 2011 ("Lancet Policy"). (DE 1-2, at 8, Compl. ¶ 13.) The Lancet Policy provides under the "General Terms, Conditions and Exclusions" section as follows:

> The coverage provided under this **Policy** is limited to liability for **Claims** first made against the **Insured** for **Bodily Injury** arising from an **Occurrence** happening subsequent to the **Retroactive Date** stated in the Declarations and which are first made against the **Insured** during the **Policy Period** and reported to Lancet Indemnity Risk Retention Group, Inc. (the "**Company**") during the **Policy Period**.

(DE 1-2, Lancet Policy at 72 (emphasis in original).)

---

[1] *See* discussion *infra* Section III.A.1.

Under the "Definitions" section of the Lancet Policy, the word "Claim" is defined as follows:

> (d) Claim means:
>
> (1) a written notice received by an **Insured**, and forwarded to us, from a person or entity, or on behalf of such person or entity by another party legally empowered to act on their behalf, alleging that such person or entity has been damaged by an **Insured** and demanding monetary damages or notifying the **Insured** of an intention to hold an **Insured** responsible for an **Occurrence**; or
>
> (2) the filing of a civil lawsuit or arbitration proceeding seeking monetary damages.
>
> Notifying us of an **Occurrence** that may result in a **Claim** as required under "Section 6-Notice Provisions" does not constitute a **Claim** first made hereunder unless it incorporates items 1 or 2 above.

(*Id.* at 74 (emphasis in original).)[2]

**B. DOH Notifies Plaintiff of Investigation of Report made by Former Patient**

In a letter dated August 20, 2013, and addressed to Plaintiff, the Florida Department of Health (the "DOH" and the "Department") notified Plaintiff that it was investigating a complaint (the "Report") the DOH had received regarding Plaintiff's possible violations of the Medical Practices Act in connection with medical treatment Plaintiff rendered to patient V. G.[3] ("DOH Letter"). (DE 1-2, Compl. ¶ 16; DE 9, Sealed DOH Letter at 2-3.) The DOH Letter stated in relevant part, "We are currently investigating the enclosed document received by the Department of Health. This

---

[2] The Lancet Policy defines the term "Occurrence" as follows: "**Occurrence** means an **Adverse Event** or an accident, including continuous or repeated exposure to substantially the same general harmful conditions, provided always that such **Adverse Event**, accident or conditions first happened after the **Retroactive Date** reflected in the Declarations." (DE 1-2, Lancet Policy at 77 (emphasis in original).) The term "Adverse Event" is defined in the Lancet Policy as follows: "**Adverse Event** means any act, error or omission in the furnishing of **Professional Services** as a qualified physician or paraprofessional in the normal course of activity as a qualified physician or paraprofessional." (*Id.* at 74 (emphasis in original).)

[3] The patient's full name has been withheld to protect the privacy of the individual. The patient will be referred to herein by his or her initials, "V.G."

investigation was initiated after it was determined that you may have violated the Medical Practices Act." (DE 9 at 2.) The DOH Letter outlined procedures governing the investigation. (*Id.*)[4]

### C. Patient's Attorney Requests Insurance Information

In a letter dated December 9, 2013, and addressed to Plaintiff, the attorney representing patient V. G. requested that Plaintiff provide, pursuant to section 627.4137 of the Florida Statutes, a statement setting forth certain specified "information with regard to each policy of insurance" ("Insurance Letter"). (DE 1-2, Compl. ¶ 17; DE 1-3, Insurance Letter at 48-49.) The body of the Insurance Letter stated:

> Re: Our Client: [V.G.]
> D/A: June 10, 2013
>
> To Whom it May Concern:
>
> The undersigned represents [V.G.].
>
> Pursuant to the provisions of Florida Statutes Section 627.4137 contained within the 1992 Insurance Code, we hereby request that you provide us within the next thirty days, a statement, under oath, of a corporate officer setting forth the following information with regard to each policy of insurance, including excess or umbrella insurance *concerning the above-captioned claim*:
>
> a. The name of each insurer providing insurance coverage;
> b. the name of each insured;
> c. the limits of liability, and the limits of any umbrella policy;
> d. the amount of any Med-Pay provisions of any applicable policy or policies of insurance;
> e. a statement of any policy or coverage defenses which said insurer reasonably believes is available to said insured as of the date of sending us your response;
> f. a copy of each policy of liability providing coverage *for the above captioned claim.*
>
> *Please forward this letter to your carrier at your earliest convenience.* We look forward to your timely and complete response to this request. Your failure to provide us with information within thirty days constitutes a criminal offense, F.S. § 624.15. Failure to provide us with the requested information within thirty days constitutes a violation of Florida Statute § 624.15.

[4] The DOH ultimately decided to dismiss the disciplinary proceeding against Plaintiff. (DE 1-2, Compl. ¶ 62.)

(DE 1-3, Insurance Letter at 48-49 (emphasis added).)

**D. Former Patient Issues Notice of Intent**

On July 8, 2014, after the end of the policy period, the patient V. G. issued a Notice of Intent to make a claim for damages related to V. G.'s treatment. (DE 1-2, Compl. ¶ 28.)

**E. Lancet Denies Coverage**

On or about July 15, 2014, Defendant Lancet advised Plaintiff that it would not provide coverage for V. G.'s claim under the Lancet Policy. (*Id.* ¶ 29.) On or about August 9, 2014, Plaintiff also received correspondence from Defendant Physicians Casualty Risk Retention Group ("Physicians Casualty") advising that Physicians Casualty would not provide coverage. (*Id.* ¶ 31.)

**F. Plaintiff Files Suit**

This lawsuit was originally filed in state court and then removed to this Court. (DE 1.) In the Complaint, Plaintiff asserts a breach of contract claim and a declaratory judgment claim against Defendant Lancet (Counts I and V, respectively), as well as a breach of contract claim and declaratory judgment claim against another insurer, Defendant Physicians Casualty (Counts II and IV, respectively).[5] (DE 1-2, at 8, Compl.)

As to the claims against Lancet, Plaintiff alleges that Lancet breached its duty under the Lancet Policy to defend and indemnify Plaintiff against the claim made by patient V. G. Plaintiff also seeks a declaration that the patient V. G. brought a "Claim" against him as defined in the Lancet Policy and therefore Lancet has a duty to defend and indemnify. (*Id.* at 15, 21-26.) Plaintiff contends

[5] The Complaint also contained claims against Defendants The Physicians Advocate, LLC and Debra Arnemann, but those claims have been dismissed. (DE 1, Notice of Removal ¶ 7.) The Court's ruling on the Motion to Dismiss brought by Lancet is not intended to have an effect on the claims brought against Physicians Casualty.

that the Insurance Letter and/or the Report filed by V.G. with the DOH constituted a "Claim" within the meaning of the Lancet Policy. (*Id.* ¶ 68.)

Presently pending before the Court is Defendant Lancet's Motion to Dismiss (DE 1-2 at 33) the claims asserted against it in Plaintiff's Complaint (DE 1-2 at 8).

## II. <u>LEGAL STANDARD</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III. DISCUSSION

### A. Preliminary Matters

#### 1. Consideration of Documents outside Four Corners of Complaint

Lancet's Motion to Dismiss rests upon the contents of two letters that are outside the four corners of the Complaint: the DOH Letter and the Insurance Letter. In his response, Plaintiff appears to imply that the Court cannot consider these documents at the dismissal stage. (DE 10, Pl.'s Resp. at 7.) Under the law in this circuit, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005). Here, the DOH Letter and the Insurance Letter are central to Plaintiff's claims for breach of contract and declaratory relief. Not only are the documents alleged throughout the Complaint, *see e.g.* DE 1-2, Compl. ¶¶ 16, 17, 58, 59, 66, 68, but the Complaint itself acknowledges that the documents are central to the coverage controversy between the parties, *see id.* ¶ 66 ("There is a controversy between Plaintiff and Defendant, Lancet as to . . . whether the correspondence sent by V.G. to Plaintiff, and/or the claim/investigation instituted by patient, V.G., with the Florida Department of Health . . . constituted a "claim made" during that policy period . . . ."). In addition, the parties have already agreed and stipulated to the admissibility of the DOH Letter and the Insurance Letter. (DE 14, Joint Scheduling Report at 3.) Hence, Plaintiff cannot genuinely dispute their authenticity. Consequently, the Court concludes that the Court may consider the DOH Letter and the Insurance Letter in ruling on the Motion to Dismiss.

#### 2. Construction of the Insurance Policy at the Dismissal Stage

In the Motion to Dismiss, Lancet contends that it is entitled to dismissal of the claims

asserted against it because none of the documents identified in the Complaint as being provided to Lancet during the policy period constitutes a "Claim" within the meaning of the Lancet Policy. In his Response, Plaintiff argues that construction of the Lancet Policy is not an appropriate matter for resolution at the motion to dismiss stage. (DE 10, Pl.'s Resp. at 5.) Plaintiff reasons that because the allegations of the Complaint assert there is an ambiguity as to the coverage provided under the Lancet Policy (and well as the policy issued by Defendant Physicians Casualty), the coverage issue cannot be determined at the motion to dismiss stage. Further, Plaintiff emphasizes that the parties have not completed discovery and contends that therefore the arguments raised in the Motion to Dismiss are more appropriate for the summary judgment stage after the close of discovery, or at trial. (*Id.* at 6-7.)

Under Florida law, it is well settled that the construction of an insurance policy, including the extent of coverage, is a question of law for the court. *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1540 (11th Cir. 1990) (same) (applying Florida law). "If . . . the facts are not in dispute . . . , and [even if] there is an ambiguity in the policy, it is within the province of the trial judge[,] not the jury[,] to resolve the ambiguity as a matter of law." *Ellenwood v. S. United Life Ins. Co.*, 373 So. 2d 392, 394 (Fla. 1st DCA 1979). "Where, as here, the facts are essentially undisputed, whether those facts fit within the policy definition is a question of law. . . ." *State Farm Fire & Cas. Co. v. Nickelson*, 677 So. 2d 37, 38 (Fla. 1st DCA 1996).

In this case, while Plaintiff insists that the coverage determination cannot be made until after the parties have engaged in discovery, Plaintiff has not pointed to any facts that are in dispute or identified what discovery is necessary. Plaintiff's suggestion that the parties' disagreement as to

the proper meaning of the term "Claim" in the Lancet Policy creates "issues of fact" is rejected. (DE 10, Pl.'s Resp. at 9.) The parties' varying legal arguments concerning the proper construction of the Lancet Policy does not translate into disputed issues of fact. Because the facts in this case that are relevant to the coverage issue are essentially undisputed, the issue, if any, of whether an ambiguity in the Lancet Policy exists is within the province of the Court to decide as a matter of law. Furthermore, contrary to Plaintiff's position otherwise, in deciding whether an ambiguity exists as a matter of law at the motion to dismiss stage, the Court is not bound by a mere assertion in Plaintiff's pleading that an ambiguity exists. In summary, the Court rejects Plaintiff's attempt to erect artificial factual and pleading barriers to the Court's resolution of the parties' coverage dispute. Because the essential facts of the case are undisputed, the Court may resolve any ambiguities and decide whether the facts of this case fit within the language of the Lancet Policy as a matter of law at the motion to dismiss stage.[6]

**B. <u>Merits of the Motion to Dismiss</u>**

Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. *Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). When interpreting an insurance contract, it "must be read in light of the skill and experience of ordinary people, and given [its] everyday meaning." *State Farm Florida Ins. Co. v. Campbell*, 998 So. 2d 1151, 1153 (Fla. 5th DCA 2008). As discussed below, the Court concludes that there is no ambiguity in the Policy, and that the undisputed facts of this case, as alleged in the Complaint and

---

[6] Plaintiff's suggestion that Lancet is seeking dismissal of the claims asserted against Lancet due to inconsistencies in the Complaint is unfounded. Lancet is seeking dismissal based upon its well-taken argument that its denial of coverage was proper because no "Claim," as defined in the Lancet Policy, was made against Plaintiff during the policy period.

evident from documents central to Plaintiff's claims, do not fall within the term "Claim" as defined in the Lancet Policy.

**1. <u>Neither the DOH Letter nor the underlying Report filed by the Patient with the DOH is a "Claim" under the Lancet Policy</u>.**

A "claim" under the Lancet Policy is "a written notice received by an Insured" that is "from a person . . . or on behalf of such person by another party legally empowered to act on their behalf," alleging that "such person . . . has been damaged" and "demanding monetary damages or notifying the Insured of an intention to hold an Insured responsible for an Occurrence." (DE 1-2, Lancet Policy at 74 (emphasis omitted).) Although Plaintiff broadly asserts that the term "Claim" is ambiguous, Plaintiff has not pointed to any particular word or set of words within the definition of the word "Claim" that is allegedly ambiguous, and the Court has found none, as applied to the facts at bar. Significantly, Plaintiff also fails to provide the Court with a single citation to a case that holds that any of the documents or communications in this case constitutes a "Claim." Plaintiff's Response is also bereft of any legal argument addressing why any of the documents or communications in this case should fit within the definition of the term "Claim" as set forth in the Lancet Policy.

As noted above, in a letter dated August 20, 2013, the Florida Department of Health notified Plaintiff that it was investigating a report that the DOH had received regarding Plaintiff's possible violations of the Medical Practices Act in connection with medical treatment Plaintiff rendered to patient V. G. (DE 1-2, Compl. ¶ 16; DE 9, Sealed DOH Letter at 2-3.) While the DOH Letter was received by Plaintiff (the insured), as required to fall within the meaning of the term "Claim" under the Lancet Policy, the DOH Letter was not received "from a person . . . or on behalf of such person

by another party legally empowered to act on their behalf," i.e. the patient V. G. (DE 1-2, Lancet Policy at 74 (emphasis omitted).) Rather, Plaintiff received the DOH Letter from the Florida administrative agency charged with the task of investigating complaints and reports involving health care practitioners, pursuant to section 456.073 of the Florida Statutes. *See* § 456.073(1), Fla. Stat. ("The department, for the boards under its jurisdiction, shall cause to be investigated any complaint that is filed before it if the complaint is in writing, signed by the complainant, and legally sufficient."). Hence, construing the term "Claim" in accordance with the plain language of the Lancet Policy as bargained for by the parties, the Court concludes that the DOH Letter is not a "Claim" that triggered coverage.

Likewise, the underlying Report filed with the DOH does not constitute a "Claim." Although the Report was received from the patient V.G. or her legally-empowered representative, as required to fall within the meaning of the term "Claim" under the Lancet Policy, the Report was received by the DOH, not Plaintiff. (DE 9, Sealed DOH Letter, at 2 ("We are currently investigating the enclosed document *received by the Department of Health*.") (emphasis added).) Hence, based upon the DOH Letter itself, the underlying Report was not "received by an Insured," as required by the policy. (DE 1-2, Lancet Policy at 74 (emphasis omitted).) Furthermore, even if the Report had been received by Plaintiff, the Report did not "demand[] monetary damages" or "notify[] the Insured of an intention to hold an Insured responsible for an Occurrence." *Id.* Rather, the Report was filed to initiate a disciplinary investigation under section 456.073 of the Florida Statutes. By statute, any action taken by the DOH against a healthcare professional after investigation of a complaint would have been administrative in nature; the statute does not provide for civil remedies. § 456.072, Fla. Stat. (setting forth list of administrative penalties, such as reprimand, fine, restriction of practice,

probation, license suspension, and license revocation). Therefore, construing the term "Claim" in accordance with the definition set forth in the Lancet Policy, the Court concludes that the Report filed by the former patient with the DOH is not a "Claim" that triggered coverage.

**2. <u>The Insurance Letter is not a "Claim" under the Lancet Policy</u>.**

As noted above, in a letter dated December 9, 2013, an attorney representing patient V. G. requested Plaintiff to provide a statement setting forth "information with regard to each policy of insurance," pursuant to section 627.4137 of the Florida Statutes.[7] (DE 1-2, Compl. ¶ 17; DE 1-3, Insurance Letter at 48-49.) Plaintiff asserts that the Insurance Letter constitutes a "Claim" triggering coverage under the Lancet Policy, while Lancet argues that the Insurance Letter does not fall within the definition of "Claim." Applying the plain language of the Lancet Policy, the Court agrees with Lancet.

A similar issue as to whether a letter seeking insurance information pursuant to section

---

[7] Section 627.4137 of the Florida Statutes provides, in relevant part, as follows:

> (1) Each insurer which does or may provide liability insurance coverage to pay all or a portion of any claim which might be made shall provide, within 30 days of the written request of the claimant, a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance, including excess or umbrella insurance:(a) The name of the insurer. (b) The name of each insured. (c) The limits of the liability coverage. (d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement. (e) A copy of the policy. In addition, the insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers. The insurer shall then supply the information required in this subsection to the claimant within 30 days of receipt of such request.

§ 627.4137(1), Fla. Stat.

627.4137 of the Florida Statutes constituted a "claim" under an insurance policy issued by Lancet was considered in *Lancet Indemnity Risk Retention Group, Inc. v. Allied World Surplus Lines Insurance Company*, No. 15-cv-406-T-23JSS, 2016 WL 3906924 (M.D. Fla. July 19, 2016). There, an attorney (for the surviving spouse of a former patient) sent the medical center (the insured) a letter under section 627.4137 of the Florida Statutes, requesting the names of all its liability insurance companies and the amounts of coverage. The letter also stated "we are investigating a claim for damages" and warned that "[f]ailure to notify your insurance company immediately [of this letter] may cause the company to refuse to protect your interests." *Id.* at *3.

Applying the plain language of the policy, the *Allied World* court concluded that forwarding the insurance letter was not notice of a "claim" as defined in the Lancet insurance policy.[8] *Id.* Addressing the effect of the language "investigating a claim for damages" in the letter, the court found that the letter did not allege that the claimant had been damaged, but instead merely informed the insured of the investigation of a possible claim "which might be made." *Id.* (quoting the statutory language in section 627.4137 of the Florida Statutes). Further, the court found that the portion of the letter that advised the insured to forward the letter to insurers derived from a requirement in the statute, not from the alleged claimant's intention to hold the insured responsible. *Id.* For those reasons, the court concluded that the insured failed to file a claim before expiration of coverage and therefore Lancet was not required to pay the costs of defending the insured.

Like the court in *Allied World*, this Court concludes that the Insurance Letter, which requested insurance information from Plaintiff pursuant to section 627.4137 of the Florida Statutes,

[8] The definition of the term "claim" in the Lancet insurance policy at issue in *Allied World* is identical to the definition for the term "Claim" set forth in the Lancet Policy at bar.

is not a "Claim" within the meaning of the Lancet Policy. When read in conjunction with the language of the relevant statute, the word "claim" in the Insurance Letter (*e.g.*, "we request . . . information with regard to each policy of insurance . . . concerning the above-captioned claim"), is reasonably construed to mean a claim that might be made in the future, as opposed to a claim then being asserted. *See* § 627.4137(1), Fla. Stat. ("any claim which might be made"). Likewise, the request in the Insurance Letter to "forward this letter to your carrier at your earliest convenience" derives from language in section 627.4137 and cannot reasonably be construed as an expression of an intention to hold the insured responsible. *See* § 627.4137(1), Fla. Stat. ("[T]he insured, or her or his insurance agent, upon written request of the claimant or the claimant's attorney, shall disclose the name and coverage of each known insurer to the claimant and shall forward such request for information as required by this subsection to all affected insurers.").

At best, the Insurance Letter might be construed as notice of an occurrence that may result in a claim, which the Lancet Policy specifically provides is excluded from the definition of a "Claim." (DE 1-2, Lancet Policy at 74 ("Notifying us of an **Occurrence** that may result in a **Claim** as required under "Section 6-Notice Provisions" does not constitute a **Claim** first made hereunder unless it incorporates items 1 or 2 above." (emphasis in original).)

Based upon the Court's careful review, the Court finds that nothing in the Insurance Letter alleges that the former patient "has been damaged by" Plaintiff, demands monetary damages, or purports to notify the insured of an intention to hold the insured responsible. (DE 1-2, Lancet Policy at 74 (emphasis omitted).) *See Allied World*, 2016 WL 3906924, at *3 (concluding that the statement "we are investigating a claim for damages arising out of care provided to [the patient]" was not tantamount to alleging that the patient "had been damaged" by the insured, but instead merely

informed the insured of an investigation into the existence of a claim for damages); *Nat'l Fire Ins. v. Bartolazo*, 27 F.3d 518, 519 (11th Cir. 1994) (holding that a letter to a doctor from the attorney of a former patient requesting the patient's records in connection with a "claim for medical malpractice" was not a "claim," which was defined in the policy there as a "demand for money or services, naming you and alleging a medical incident," because the "letter merely requested [the patient's] medical records and alluded to a claim for malpractice"). Therefore, construing the term "Claim" in accordance with the plain definition set forth in the Lancet Policy, the Court concludes that the Insurance Letter is not a "Claim" that triggered coverage.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that there is no ambiguity in the Policy, and that none of the documents identified in the Complaint, namely, the DOH Letter, the underlying Report received by the DOH, and the Insurance Letter, falls within the term "Claim" as defined in the Lancet Policy. Because Plaintiff failed to file a "Claim" as plainly defined by the Lancet Policy before expiration of the policy period, Lancet was not required to defend and indemnify Plaintiff against the claim made by patient V. G. Therefore, Plaintiff's claims for breach of contract and declaratory judgment are subject to dismissal as a matter of law.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Lancet Indemnity Risk Retention Group, Inc.'s Motion to Dismiss (DE 1-3 at 33) is **GRANTED**. The breach of contract and declaratory judgment claims against Defendant Lancet (Counts I and V of the Complaint,

respectively) are **DISMISSED WITH PREJUDICE**.

The Clerk shall **CLOSE** this case.

**DONE AND SIGNED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of December, 2016.

KENNETH A. MARRA
United States District Judge