UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-80581-CV-MARRA/MATTHEWMAN

MERRILL REUTER, M.D.,

    Plaintiff,

v.

PYHSICIANS CASUALTY RISK RETENTION
GROUP, a foreign profit corporation,

    Defendant.
_____/



FILED by _____ D.C.

JAN 2 7 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS IN RESPONSE TO SUPPLEMENTAL REQUEST TO PRODUCE TO DEFENDANT, PHYSICIANS CASUALTY RISK RETENTION GROUP

**THIS CAUSE** is before the Court upon Plaintiff, Merrill Reuter, M.D.'s ("Plaintiff") Motion to Compel Production of Documents in Response to Supplemental Request to Produce to Defendant, Physicians Casualty Risk Retention Group ("Motion") [DE 43]. This matter was referred to the undersigned upon an Order referring all discovery matters to the undersigned for appropriate disposition. *See* DE 16. Defendant, Physicians Casualty Risk Retention Group ("Defendant"), filed a Response [DE 48], and Plaintiff filed an Amended Reply [DE 51]. The Court held a hearing on the Motion on January 24, 2017. The matter is now ripe for review.

### I.    BACKGROUND

This declaratory judgment and breach of contract action was brought by Plaintiff as a result of Defendant denying Plaintiff medical malpractice coverage following a Notice of Intent and subsequent lawsuit, which was brought by a patient against Plaintiff.

1

Plaintiff filed this Motion [DE 43] requesting that the Court compel Defendant to produce all documents responsive to Plaintiff's Request for Production #1 and Request for Production #4. [DE 43, p. 2]. Specifically, Plaintiff wants to obtain copies of all versions of the claims liability policy used by Defendant prior to or subsequent to the policy issued to Plaintiff, and copies of all correspondence between Jody Schwahn and Chris Ballentine from April 14, 2014 through the date Plaintiff filed his Complaint relating to the decision to deny and/or rescind coverage for Plaintiff. *Id.*

First, Plaintiff asserts that the prior and subsequent liability policy versions are relevant to the interpretation of the subject policy language, particularly with regard to the definition of "claim" in the policy and the language of the specific exclusions in the policy. [DE 43, p. 3]. According to Plaintiff, Defendant's corporate representative, Jody Schwahn, is responsible for drafting and revising Defendant's policies, and she testified at her deposition that there have been revisions made to clarify definitions or exclusions in prior and subsequent policies. *Id.*

Second, Plaintiff claims that the communications between Jody Schwahn and Chris Ballentine "surrounding the decision to deny coverage are central to the issues in this case, and are not protected by the attorney-client privilege under these circumstances." [DE 43, p. 4]. According to Plaintiff, these communications are central to the issues in this case because they discuss the reasons for denying coverage and rescinding Plaintiff's policy and because Ms. Schwahn testified at her deposition that she and Mr. Ballentine "collectively made the decision to deny coverage" to Plaintiff for his patient's claim against him. [DE 43, p. 5]. Plaintiff alleges that Mr. Ballentine was acting as Defendant's employee and in-house counsel, not as litigation counsel, at the time these communications occurred. *Id.* Plaintiff argues that

Defendant is attempting to use the attorney-client privilege as a sword and a shield because it argues that its decision to deny coverage and rescind the policy was proper but also wants to prevent discovery into the communications surrounding these decisions.  [DE 43, pp. 5-6].

Defendant filed its Response [DE 48] asserting that it should not be compelled to produce any of the documents at issue.  [DE 48, p. 2].  First, Defendant claims that Plaintiff is not entitled to production of Defendant's prior and subsequent policies because they are irrelevant to interpreting Plaintiff's policy under Florida law, which is the law applicable to this case.  *Id.* According to Defendant, under Florida law, "interpretation of an insurance policy is a question of law to be determined by the court" and "[t]his determination is based on the language of the policy."  [DE 48, p. 3].  Second, Defendant asserts that Plaintiff is not entitled to the communications between Defendant's representative and Mr. Ballentine because they are protected by the attorney-client privilege.  [DE 48, p. 4].  Defendant argues that it investigated Plaintiff's claim and issued its initial denial letter before it ever contacted Mr. Ballentine, who is outside counsel and not in-house counsel.  [DE 48, p. 5].  Defendant contends that it is not using the attorney-client privilege as a sword and a shield because Mr. Ballentine is not going to be called as a witness and the Court will be deciding the coverage issues as a matter of law.  [DE 48, p. 6].

In Plaintiff's Amended Reply [DE 51], he claims that, in a declaratory judgment and breach of contract claim, "where provisions of a contract are ambiguous and unclear on the face of the agreement, courts may consider evidence outside of the plain language in order to determine the intent of the parties at the time of formation of the contract at issue."  [DE 51, p. 2].  According to Plaintiff, this extrinsic evidence may include prior versions of an insurance

3

policy. *Id.* Plaintiff contends that there is an ambiguity "as to the meaning and application of the 'exclusions' to the facts of this case." *Id.* Further, Plaintiff asserts that Ms. Schwahn testified at her deposition that Mr. Ballentine "was involved in the decision to deny coverage to [Plaintiff] for the medical malpractice claim at issue in this case." [DE 51, pp. 2-3]. Therefore, Plaintiff claims that Mr. Ballentine's communications with Ms. Schwahn are not privileged. [DE 51, p. 3].

## II. ANALYSIS

Federal Rule of Civil Procedure 26(b)—which governs the scope of discovery—provides, in pertinent part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). As noted by Chief Justice John Roberts in his 2015 Year-End Report on the Federal Judiciary[1], in which he discusses the importance of the December 1, 2015 amendments to the Federal Rules of Civil Procedure, the new Rules require that all parties and their counsel are required to size and shape their discovery requests to the requisites of a case. "Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.* at p. 7; see e.g. *O'Boyle v. Sweetapple*, 2016 WL 492655, f.n. 2 (S.D. Fla. Feb. 8, 2016). This also means that parties and their counsel are required to confer in good faith before filing any discovery motion in an honest effort to resolve discovery disputes and ensure the just, speedy and inexpensive determination of every action or proceeding. As stated by Chief Justice

---

[1] *See* Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary* (Jan. 19, 2017) https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf.

Roberts:

> I cannot believe that many members of the bar went to law school because of a burning desire to spend their professional life wearing down opponents with creatively burdensome discovery requests or evading legitimate requests through dilatory tactics. The test for plaintiffs' and defendants' counsel alike is whether they will affirmatively search out cooperative solutions, chart a cost-effective course of litigation, and assume shared responsibility with opposing counsel to achieve just results.

*Year-End Report* at p. 11.

Thus, this Court must first determine whether the specific discovery sought is relevant to Plaintiff's claim or Defendant's defense and whether it is proportionate to the needs of the case. Then, the Court must determine whether the communications involving Mr. Ballentine are privileged, and, if so, whether any waiver has occurred.

A. <u>The Prior and Subsequent Liability Policies</u>

For Request #1 relating to the prior and subsequent policies, Defendant cites *Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 146837 (S.D. Fla. 2011), for the proposition that interpretation of the prior and subsequent policies is not relevant in this case. In *Diamond State*, Judge Simonton noted that under Florida law, the construction and interpretation of an insurance policy is a question of law to be determined by the court. *Id.* at *2. She also noted that "if, after construing the policy, the court finds that more than one interpretation is possible, it must resolve the ambiguity against the insurer who drafted the language of the insurance contract." *Id.*; *see also Medmarc Cas. Ins. Co. v. Ventura*, No. 07-23300-CIV, 2008 WL 4371311, *3 (S.D. Fla. Sept. 19, 2008). Therefore, the court in *Diamond State* concluded that a corporate representative's testimony regarding the interpretation of an insurance policy is irrelevant. *Diamond State*, 2011 WL 146837 at *4.

5

Plaintiff relies on contract cases outside of the insurance context to argue that where provisions of a contract are ambiguous and unclear on the face of the agreement, courts may consider evidence outside of the plain language in order to determine the intent of the parties at the time of formation of the contract at issue. While such case law is relevant to general contract principles, the issue in the present case is the interpretation of an insurance contract.

The Court finds that the analysis applied by Judge Simonton in *Diamond State* is applicable to the specific facts of the instant case and applies with equal force to discovery of the prior and subsequent liability policies. The prior and subsequent liability policies, and Defendant's interpretation of those prior and subsequent polices, are irrelevant to the Court's determination of whether Plaintiff's specific policy at issue in this case is ambiguous. If the Court finds that Plaintiff's specific policy was ambiguous then any ambiguity will, under Florida law, be resolved in favor of Plaintiff, the insured. There is no need for the Court to look at prior or subsequent versions of Defendant's policies to determine whether Plaintiff's policy is ambiguous.

Further, the Court finds that production of the prior and subsequent policies would be disproportionate under Federal Rule of Civil Procedure 26(b)(1). The amount of time and expense that would go into discovery of "all versions of the claims liability policy used by [Defendant] prior or subsequent to the policy that was issued to [Plaintiff] on May 18, 2014" would be disproportionate to the needs of the case. Such a request could return countless versions of Defendant's prior and subsequent liability policies without any regard to whether those policies relate to Plaintiff's policy. Moreover, the prior and subsequent liability policies constitute unnecessary and wasteful discovery which is not permitted under Rule 26 (b)(1).

B. The Attorney-Client Privileged Communications

For Request #4 relating to the attorney-client privilege, Mr. Ballentine, who is representing Defendant as outside counsel in this action, represented at the hearing that he is outside litigation counsel for Defendant. He further represented that he has never been an employee of Defendant and has never served as in-house counsel for Defendant. Defendant filed an affidavit of Ms. Schwahn which also supports Mr. Ballentine's representations to the Court.

The Court finds that Plaintiff's counsel's representation in Plaintiff's Motion to Compel [DE 43, pp. 5-6] to the effect that Mr. Ballentine was an employee and in-house counsel for Defendant is simply not accurate. The facts show otherwise—Mr. Ballentine is outside counsel who was retained by Defendant in anticipation of litigation. Further, Mr. Ballentine represented that he was not involved in the initial decision to deny coverage to Plaintiff, and only got involved in the case after the initial coverage denial decision was made and at the point when Defendant anticipated litigation.

It is clear that Defendant sent its initial letter to Plaintiff denying coverage on August 1, 2014. [DE 48-2, p. 4]. The communications on Defendant's privilege log between Ms. Schwahn and Mr. Ballentine are all dated after the August 1, 2014 initial denial of Plaintiff's coverage. *See* DE 48-2, p. 14. Thus, it is clear that Mr. Ballentine had no involvement in Defendant's initial denial of Plaintiff's claim. Once an insurer denies a coverage claim, the documents may be privileged if there is anticipation of litigation. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007). As Mr. Ballentine represented at the hearing, as an officer of the court, Defendant contacted him after it denied coverage to Plaintiff because it

7

anticipated that litigation may follow. The Court finds that Mr. Ballentine was not retained as outside counsel in this case until such time as Defendant reasonably anticipated litigation. Therefore, the communications between Defendant's representative and Mr. Ballentine are clearly privileged. *See* Fla. Stat. § 95.502.[2]

Plaintiff's counsel ultimately conceded at the hearing that these communications are attorney-client privileged; however, Plaintiff asserted that, although these documents are privileged, Defendant is using them as a sword and a shield and the privilege should not attach to them. Generally, a party waives the attorney-client privilege if the party "injects the very issue which requires testimony from his attorney." *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 643 (S.D. Fla. 2007)(citations omitted). However, in the instant case, Defendant is not attempting to use the attorney-client privilege to prejudice Plaintiff's case while simultaneously disclosing some selected communications for self-serving purposes. *See id.*

The Court rejects Plaintiff's sword and shield argument as it is simply not applicable to the facts of this case. The Court also finds that applying the sword and shield doctrine in this case would essentially eviscerate the attorney-client privilege, one of the most sacrosanct principles of the law.[3] Defendant has established that Mr. Ballentine, as outside counsel, only became involved in the case after Defendant denied coverage to Plaintiff and once Defendant anticipated litigation. Further, Mr. Ballentine is not a witness in this case and will not be testifying. Therefore, the communications between Defendant's representative and Mr.

---

[2] "Under Florida law, an attorney's client is permitted 'to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.'" *Maharaj v. Geico Casualty Co.*, 289 F.R.D. 666, 669 (S.D. Fla. 2013) (citing Fla. Stat. § 95.502).

[3] *See Upjohn Co. v. U.S.*, 449 U.S. 383, 388 (1981); *see also Maharaj*, 289 F.R.D. at 669 ("The confidentiality of attorney-client privileged communications 'is an interest traditionally deemed worthy of maximum legal protection.'" (citing *State Farm Fla. Ins. Co. v. Puig*, 62 So.3d 23, 27 (Fla.Dist.Ct.App. 2011))).

Ballentine are attorney-client privileged communications and there is no sword and shield waiver.

### III. CONCLUSION

As stated in open court, and as further addressed in this written Order, it is hereby **ORDERED** that Plaintiff's Motion to Compel Production of Documents in Response to Supplemental Request to Produce to Defendant, Physicians Casualty Risk Retention Group [DE 43] is **DENIED**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of January, 2017.

*William Matthewman*
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE